**In re Deborah Helen BIRRANE, Debtor.**

**Pennsylvania Higher Education Assistance Agency, Appellant,**

v.

**Deborah Helen Birrane, Appellee.**

**BAP No. WW–02–1186–HRyMa.**
**Bankruptcy No. 01–16399.**
**Adversary No. 01–01413.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 20, 2002.

Filed Dec. 6, 2002.

Trevor L. Alt, Law Offices of Trevor Lee Alt, Incline Village, NV, for Pennsylvania Higher Education Assistance Agency.

Martin E. Snodgrass, Snodgrass & Warren, Everett, WA, for Deborah Helen Birrane.

Before HARGROVE [1], RYAN, and MARLAR, Bankruptcy Judges.

## OPINION

HARGROVE, Bankruptcy Judge.

Pennsylvania Higher Education Assistance Agency ("PHEAA") appeals the bankruptcy court's finding that debtor Deborah Helen Birrane's ("Birrane") student loan is dischargeable under 11 U.S.C. § 523(a)(8). WE REVERSE.

## I.

### FACTS

Birrane was 36 years old, single and had no dependents at the time of trial in this matter. She earned a Bachelor of Arts degree in social work, with a minor in dance, from Penn State University in 1989. She earned a Master of Fine Arts degree, with an emphasis on dance choreography and performance, from the University of Arizona in 1995.

Birrane financed her education in the approximate amount of $50,500 by obtaining a student loan from Mellon Financial Corporation, guarantied by PHEAA and serviced by Student Loan Servicing Center. At the time of trial, she owed approximately $57,092.87 in student loan debt that carried an interest rate of 9%. According to PHEAA, if the loan was deemed nondischargeable, the monthly payment amount would be approximately $473.00 on a 25–year repayment plan.

Prior to and at the time of trial, Birrane was an independent contractor who taught creative and modern dance to children at various locations in the Seattle area. She worked for several entities that paid her hourly rates ranging from $30 to $50 per hour. Her 2001 adjusted gross income was $21,155 for which she worked approximately 721 hours throughout the year. Besides her teaching activities, Birrane donated approximately 728 hours in 2001 to her dance company.[2]

Birrane filed this adversary on July 25, 2001, seeking an undue hardship discharge of her student loan obligation under § 523(a)(8). The bankruptcy court held a trial on January 31, 2002. Birrane was the only witness. The bankruptcy court issued an oral ruling on February 11, 2002, and found Birrane met the three-part test under *In re Brunner*, 46 B.R. 752, 756 (S.D.N.Y.1985) *aff'd* 831 F.2d 395 (2d Cir. 1987) [hereinafter *Brunner*] which has been adopted by the Ninth Circuit in *In re Pena*, 155 F.3d 1108, 1112 (9th Cir.1998). The student debt was discharged. The order was entered on March 12, 2002. This is the order PHEAA appeals from.

## II.

### STANDARD OF REVIEW

The Panel reviews the bankruptcy court's findings of fact under a clearly erroneous standard. *See Pena*, 155 F.3d at 1110. A factual finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68

---

1. Honorable John J. Hargrove, Chief Bankruptcy Judge for the Southern District of California, sitting by designation.

2. Birrane started the dance company in 1998. The company puts on performances at various venues in Seattle. The company is currently applying for non-profit status.

S.Ct. 525, 92 L.Ed. 746 (1948). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

The Panel reviews the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable as an undue hardship *de novo.* *See In re Taylor,* 223 B.R. 747, 750 (9th Cir. BAP 1998).

## III.

### DISCUSSION

This case involves the dischargeability of a student loan under § 523(a)(8) which provides:

> A discharge under section 727 … does not discharge an individual debtor from any debt—for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8)

There is no definition of undue hardship in the Bankruptcy Code. Thus, to determine if excepting student loans from discharge will create an undue hardship on a debtor, the Ninth Circuit has adopted the three-part test set forth in *Brunner.* *See Pena,* 155 F.3d at 1112. To obtain a discharge of a student loan obligation, the debtor bears the burden of proving by a preponderance of the evidence, all of the following:

1) That the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

3) That the debtor has made good faith efforts to repay the loans. *Pena,* 155 F.3d at 1111.

A. *The First Prong of the Brunner Test Requires the Debtor to Prove That She Cannot Maintain, Based on Current Income and Expenses, a Minimal Standard of Living for Herself and Her Dependents If Forced to Repay the Loans.*

PHEAA argues that the bankruptcy court committed both errors of fact and of law in its application of the first *Brunner* prong when it determined that Birrane would not be able to maintain a minimal standard of living if forced to repay her student loans. Specifically, a) the bankruptcy court found that Birrane's income and expenses were approximately equal despite Birrane's testimony that she had over $400 monthly surplus disposable income; b) the bankruptcy court incorrectly applied the legal standard because it did not consider that Birrane has failed to maximize her income; and c) the bankruptcy court incorrectly applied the legal standard by failing to properly consider that Birrane has not attempted to repay her student loans using the Income Contingent Repayment Plan ("ICRP"), which ties loan repayments to the debtor's in-

come, as adjusted annually.[3]

█ The first prong of the *Brunner* test requires an examination of Birrane's current income and expenses to see if payment of the loan would cause her standard of living to fall below that minimally necessary.

> To meet this requirement, the debtor must demonstrate more than simply tight finances. In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness. The proper inquiry is whether it would be "unconscionable" to require the debtor to take steps to earn more income or reduce her expenses. *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999) (citations omitted).

PHEAA contends that the bankruptcy court erred in connection with Birrane's expenses. First, PHEAA contends that Birrane's testimony showed that she had only $1400 a month in expenses leaving approximately $400 surplus a month. Second, PHEAA contends that Birrane failed to minimize her expenses because some were unnecessary to maintain a minimal standard of living.

### 1. *Income and Expenses "About the Same."*

█ The bankruptcy court found that Birrane's monthly net income was $1800 per month and her monthly expenses "are about the same." In issuing its oral ruling, the court noted:

> According to the debtor, she spends little money on clothing and takes no vacations. As to the first prong, I conclude that the debtor, based on her current income and expenses, maintains a minimal standard of living for herself.... At present, the debtor cannot afford to make the minimal payments required by any of the government repayment programs or any minimal payment....Tr. of Proceedings (Feb. 11, 2002), at 87–88.

Birrane presented evidence of her expenses by extrapolating information from her checkbook. It is undisputed that those expenses approximated $1,400. Birrane testified however that she incurred additional expenses for gas and food and an occasional birthday not reflected in her check register. Birrane also testified that she "takes money, cash" to the dance company, but that amount was "no more than a few hundred dollars a year." She further indicated that her income fluctuated so she often was playing catch-up.

█ The evidence supports the bankruptcy court's conclusion that Birrane's income and expenses "were about the same." Tr. of Proceedings (Feb. 11, 2002), at 87. Birrane traveled to different places to teach dance. The implication is that her gas expenditures may be somewhat significant. Moreover, since her income fluctuated, it is reasonable to assume that expenses for some months were greater than

---

**3.** The ICRP permits a student loan debtor to pay 20% of the difference between his or her adjusted gross income and the poverty level for her family size or the amount the debtor would pay if the debt were repaid in 12 years, whichever is less. A debtor's payments could be as low as $0.00, which amount would be subject to adjustment each year based upon the then current balance on the loan as well as the current adjusted gross income. It is possible that the student loan debtor will not make payments large enough to pay off the loan in 25 years. If this happens, after 25 years (excluding periods of deferment, forbearance, etc.), the unpaid amount of the loan is discharged. *See In re Wallace*, 259 B.R. 170, 174 (C.D.Cal.2000). Whether a debtor should be denied a discharge of her student loan because she failed to take part in the ICRP is discussed under the "good faith" prong of the *Brunner* test.

others. " 'The method for calculating a debtor's average monthly expenses is a matter properly left to the discretion of the bankruptcy court." ' *Pena,* 155 F.3d at 1112. Therefore, the Panel cannot find that the bankruptcy court's factual finding that Birrane's income and expenses were approximately equal is clearly erroneous.

### 2. *Expenses Beyond Minimal Standard of Living Standard.*

PHEAA also contends that the bankruptcy court incorrectly applied the legal standard under this prong of *Brunner* because Birrane had failed to minimize her expenses. PHEAA contends that Birrane had extraneous expenses for the dance company, charitable contributions to Amnesty International, dining out expenses, and book club purchases and gifts.

There were no specific findings on the record regarding the disputed expense items above. However, Birrane presented evidence regarding the amounts of the various expenditures and was cross-examined by PHEAA's counsel. Presumably the bankruptcy court heard and considered this evidence when making its finding regarding the first prong of the *Brunner* test.

Even so, whether to decline a discharge due to expenses which may be beyond the minimal standard of living is discretionary with the court. For example, courts may decline to discharge student loan debt where the debtor's budget contains certain items such as cable television, a new car, and private schooling. *In re Rifino,* 245 F.3d 1083, 1087 (9th Cir. 2001) (citations omitted). Nonetheless, a bankruptcy court's refusal to decline a discharge because of these expenses, may not be "necessarily clearly erroneous." *Id.* at 1088 (citing *Anderson,* 470 U.S. at 574, 105 S.Ct. 1504) ("where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous"). Further, it appears from the evidence before the bankruptcy court that the amounts involved for at least some of the so-called extraneous expenses were *de minimus.*[4] Therefore, the Panel cannot find the bankruptcy court committed an error of law when applying the first prong of the *Brunner* test in this regard.[5]

The bankruptcy court's finding that Birrane met the requirements under the first prong of the *Brunner* test should be affirmed. "Only if the debtor meets this test should a court examine the other two *Brunner* requirements." *In re Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993).

---

**4.** For example, in 2001, Birrane donated the following to Amnesty International: $25.00 in January, $13.54 in May, and $40.00 in November. In addition, in February she donated $10.00 to the Cystic Fibrosis Foundation. Her book club expenses were listed as follows: $11.95 in March, $24.37 in April, $15.18 in June, $18.33 in October, $30.46 in November, and $18.38 in December. Further, she testified that she gave a few hundred dollars a year to her dance company. It is unclear from the record how much Birrane spent on dining out and gifts.

**5.** PHEAA also contends that the bankruptcy court incorrectly applied the legal standard under this prong of *Brunner* because Birrane

has failed to maximize her income. PHEAA also makes this argument under the third prong of the *Brunner* test and the Panel discusses this argument under that section below. A debtor's efforts to maximize her income are considered under the third "good faith" prong of the *Brunner* test. *See In re Goulet v. Educational Credit Management Corp.,* 284 F.3d 773, 779 (7th Cir.2002) (the third prong of the *Brunner* test "recognizes that 'with the receipt of a government-guaranteed education, the student assumes an obligation to make a good faith effort to repay those loans, as measured by his or her efforts to obtain employment, maximize income, and minimize expenses' ") (citation omitted).

B. *The Second Prong of the Brunner Test Requires the Debtor to Prove That Additional Circumstances Exist Indicating That this State of Affairs Is Likely to Persist for a Significant Portion of the Repayment Period of the Student Loans.*

■ PHEAA argues that the bankruptcy court incorrectly applied the legal standard under the second *Brunner* prong when it found Birrane's current state of affairs is likely to persist for a significant portion of the repayment period of her student loans, where a) she voluntarily devotes approximately 50% of her working hours to managing an unprofitable dance company which pays her no salary; and b) she has not attempted to repay her loans using the ICRP.

■ The "additional circumstances" prong of the *Brunner* test "is intended to effect 'the clear congressional intent exhibited in § 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt.' " *Rifino,* 245 F.3d at 1088–89 (citations omitted). There must be evidence that the debtor's "road to recovery is obstructed by the type of barrier that would lead [the court] to believe he will lack the ability to repay for several years." *Roberson,* 999 F.2d at 1137 (citations omitted). Examples of such barriers may include psychiatric problems, lack of usable job skills and severely limited education. *Id.* (citations omitted). *See also Pena,* 155 F.3d at 1114 (affirming bankruptcy court's finding that second prong of *Brunner* test was met when the debtors presented evidence of the wife's serious, ongoing mental disability which prevented her from obtaining meaningful, permanent employment); *compare In re Brightful,* 267 F.3d 324, 330 (3rd Cir.2001) (bankruptcy court found that second prong of *Brunner* test was met because debtor most likely would never attain her college degree, lacked vocational training, suffered psychiatric problems and was emotionally unstable. The Third Circuit reversed finding that the debtor was nonetheless "intelligent, physically healthy, currently employed, possessed useful skills … and had no extraordinary, non-discretionary expenses").

In this case, the bankruptcy court noted that the second prong of the *Brunner* test "is the critical problem in this case." Tr. of Proceedings (Feb. 11, 2002), at 89. The bankruptcy court noted:

> PHEAA had argued why didn't the debtor get a full time job; or why doesn't she get part-time work that would enhance her income and enable her to make some payments on the student loans? Either course would necessarily require her to give up the dance company which is some cultural benefit to the community. The debtor is well-educated and intelligent. However, as I mentioned before, she has no skills outside her field. If she decides to seek other employment, she would require additional training which she cannot afford, or she would have to start at the bottom and acquire skills through on-the-job training. I am convinced that if the debtor did find a so-called "real job," her income would be about the same as her present earnings and for the foreseeable future she would be in the same financial condition that she now faces. Of course there is always the possibility of advancement with higher pay. However, at this point, I am speculating and I do not want to engage in that sort of speculation. *Id.* at 89–90.

1. *No Insurmountable Barriers.*

There was no evidence on the record that demonstrated Birrane had any mental, physical, or other problems that were either insurmountable or that impaired her

ability to work. At most, her feet sometimes gave her problems because of her dance activities. There was also no evidence that Birrane had any extraordinary non-discretionary expenses such as those related to medical needs. Moreover, the bankruptcy court found that Birrane is well-educated and intelligent. Therefore, Birrane is not hindered by a "severely limited education."

### 2. *Future Prospects for Employment Are Promising.*

The evidence showed that Birrane works approximately 25 hours a week and she devotes approximately the same amount of time to her non-profit dance company. Specifically, Birrane testified that in connection with her dance company she rehearses for eight hours a week, works an additional five hours a week just on choreography, writes grants (one to ten hours a week), and meets with the board of directors. Birrane also testified that although the dance company lost money in 2001, she was hopeful that its income will increase in the future.

There are several implications that can be drawn from Birrane's involvement with her dance company. First, Birrane must be willing and physically able to work hard since she devotes a significant amount of time to this endeavor. Next, she must possess some talent for choreography and dance as evidenced by the fact that her dance company has put on several performances. Birrane must also possess some skills for running a dance company since it has stayed afloat since 1998 and she was optimistic that its income would increase in the future. Finally, Birrane's dance company activities cannot escape the notice of the public because the company is giving performances. Given her hard work, talent, and exposure to the public, it appears that Birrane's prospects at future employ-

ment within her chosen field are quite good.

Further, there is nothing in the record that indicates Birrane is unemployable in other areas. The bankruptcy court conceded as much by noting that Birrane would have to start at the bottom and acquire on the job training if she worked outside her field. The implication is that Birrane was employable outside her field, although her hourly pay may be less than what she is used to.

The bankruptcy court further noted there "was always the possibility of advancement and more pay." Tr. of Proceedings (Feb. 11, 2002), at 90. Although the bankruptcy court declined to speculate at Birrane's future employment prospects, this prong of the *Brunner* test necessarily looks to the future and the court must consider the likelihood that the debtor's financial situation will improve sufficiently to permit her to resume paying her educational loans. As a result, some speculation is obviously involved. *See Roberson,* 999 F.2d at 1137 (noting that any precise prediction of future earnings is necessarily speculative). The comments made by the bankruptcy judge regarding the possibility for advancement and more pay do not seem improbable or far-fetched given Birrane's education, her age, health, and lack of any limitations that would impair her employment.

In sum, the record is devoid of any evidence demonstrating that Birrane's current inability to meet her student loan obligations will continue for a significant part of the repayment period. PHEAA stated in its trial brief that the repayment period was 25 years. Birrane has the burden to prove that she *cannot* earn more money in the years to come. There are simply no "additional circumstances" that would impair her ability in this regard. Birrane is well-educated, intelligent, physi-

cally healthy and has no extraordinary, non-discretionary expenses.

The Panel finds therefore that the bankruptcy court erred as a matter of law in holding that Birrane's circumstances rise to the level of those "additional circumstances" necessary to satisfy the second prong of the *Brunner* test. Generally, if one of the elements of the three part "undue hardship" test is not proven, the inquiry must end and the student loan cannot be discharged. The analysis under the third prong below may therefore be unnecessary.

C. *The Third Prong of the Brunner Test Requires That the Debtor Prove She Has Made Good Faith Efforts to Repay the Loans.*

 Courts have measured good faith by examining various factors; the fact debtor has made no payments or has made some payments on the loan is not in and of itself dispositive. *In re Nary*, 253 B.R. 752, 768 (N.D.Tex.2000) (court may evaluate the debtor's conduct in the broader context of his total financial picture). "Good faith is measured by the debtor's 'efforts to obtain employment, maximize income, and minimize expenses.'" *Roberson*, 999 F.2d at 1136; *In re Goulet*, 284 F.3d at 779 (same); *see also Pena*, 155 F.3d at 1114 (holding that bankruptcy court did not clearly err in finding that debtor had exhibited good faith in paying back student loans where, *inter alia*, debtor used large sum disability benefits distribution to pay down portions of other debts that were approximately four times amount of student loans). "A debtor's effort—or lack thereof—to negotiate a repayment plan is an important indicator of good faith." *Wallace*, 259 B.R. at 185 (citations omitted).

PHEAA contends that the bankruptcy court incorrectly applied the legal standard under the third *Brunner* prong when it determined that Birrane made a good faith effort to repay her student loans, even though she a) did not make an effort to maximize her income; and b) did not make an effort to repay her loans using the ICRP.

1. *Maximizing Income.*

The bankruptcy court found that "debtor has satisfied the third prong; namely that she has made good faith efforts to repay the loans as evidenced by the several payments she made."[6] Tr. of Proceedings (Feb. 11, 2002), at 88. The bankruptcy court made no other findings regarding the good faith prong. However, good faith is also measured by the debtor's efforts to obtain employment and maximize income.

Birrane's current employment allows her to reap the benefits of her education. Yet, Birrane is not working full time. There was no evidence that she explored the possibility, or was even willing, to take a second job outside her field that would allow her to meet her student loan obligations. For example, she testified that she had not applied for any jobs in the social work field in the last five years even though she has a Bachelor of Arts degree in social work.

Further, Birrane evidently has her mornings free because she does not teach until late afternoon. Her evenings are spent at her non-profit dance company. Consequently, there is ample time for Birrane to work for additional income that could be used to repay her student loan. She might also be able to apply her dance skills to help choreograph routines for young and up-coming gymnasts, figure-skaters, or even the community college

---

**6.** The record shows that Birrane made payments on the loan from 1996 to March 2001.

and college dance teams or take on private students. Simply one or two private students at $40 to $50 an hour would provide additional income to repay her student loan. There was no evidence that Birrane explored these or other possibilities within her field.

 "[T]he debtor may not willfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'" *Roberson*, 999 F.2d at 1135. Declining to obtain additional work is not a factor beyond Birrane's reasonable control. In sum, she has not used her best efforts to maximize her income and therefore the Panel cannot find that she has made a good faith effort to repay the loan.

### 2. ICRP.

Good faith is also measured by a debtor's effort—or lack thereof—to negotiate a repayment plan. *See Wallace*, 259 B.R. at 185. The Panel notes that Birrane previously made some effort in negotiating repayment of her student debt. For example, in July 2000, she made a request under the Income Sensitive Repayment and Forbearance Program which, according to Birrane, was denied. Moreover, Birrane continued making payments on the loan until March 2001.

 Nonetheless, "[a] debtor's obligation to make 'good faith' efforts to repay [her] education loans is not extinguished with the filing of an adversary proceeding in bankruptcy." *Id.* Even though Birrane learned about the ICRP apparently for the first time during this trial, there was no evidence that she had any discussions with PHEAA regarding the ICRP option that is available to her. Under the ICRP program, Birrane would pay $141.77 with her current income level. This amount would be adjusted yearly depending upon Birrane's income. Further, at the end of 25 years, Birrane will be 61 years old, and any remaining balance on the loan would be discharged. At oral argument before the Panel, PHEAA assured us that Birrane would qualify for the ICRP program. Yet, Birrane not only ceased payments on her student loan in March 2001, but also ceased any efforts to renegotiate a repayment schedule which would accommodate her means even though one was available.

Birrane has the burden of proof on the issue of good faith. The Panel finds that the bankruptcy court erred as a matter of law in finding that Birrane met the good faith prong. She has not only failed to maximize her income by seeking part-time work, but has failed to take any steps towards renegotiating a repayment scheduled under the ICRP program.[7] These factors are not beyond her reasonable control.

## VI.

### CONCLUSION

The bankruptcy court did not commit clear error by finding Birrane's income and expenses were approximately equal, nor did it commit an error of law by not finding that any of her expenses were beyond what was necessary to maintain a

---

7. The Panel notes there is some likelihood that any forgiveness of the student loan debt at the end of the 25 year period may be subject to income tax. However, one court noted that "the tax implications of a discharge under the ICRP are speculative at best given that the ICRP is only eight years old." *In re Archibald*, 280 B.R. 222, 228 (Bankr. S.D.Ind.2002). The court went on to note that it was "not unlikely that a discharge at the end of such a program could be considered cancellation of indebtedness income to the debtor. Despite this, the availability of the ICRP is still a factor to be considered in the *Brunner/Roberson* analysis." *Id.*

minimal standard of living. However, the bankruptcy erred as a matter of law in applying the second and third prong of the *Brunner* test. Therefore, the bankruptcy court's order discharging Birrane's student loan is REVERSED.