**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   WW-18-1259-BKuF |
| PAUL HURLEY, | Bk. No.   2:16-bk-13155-TWD |
| Debtor. | Adv. No.   2:17-ap-01025-TWD |
| PAUL HURLEY, | |
| Appellant, | |
| v. | **OPINION** |
| UNITED STATES OF AMERICA; ACCESSLEX INSTITUTE dba Access Group, | |
| Appellees. | |

Submitted Without Oral Argument on May 23, 2019

Filed – June 26, 2019

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Timothy W. Dore, Bankruptcy Judge, Presiding

Appearances:     Appellant Paul Hurley pro se on brief; Annette L. Hayes and Pooja Faldu Davé on brief for Appellee the United States of America; Joseph Ward McIntosh of McCarthy & Holthus, LLP on brief for Appellee Accesslex Institute dba Access Group.

———

Before: BRAND, KURTZ and FARIS, Bankruptcy Judges.

BRAND, Bankruptcy Judge:

## INTRODUCTION

Appellant Paul Hurley appeals a summary judgment order in favor of the United States and Accesslex Institute, dba Access Group (together, "Defendants"). The bankruptcy court determined that, given Hurley's legal background and the nature of his criminal conduct, he was unable to establish good faith under *Brunner*[1] and therefore was not entitled to a hardship discharge of his student loans under § 523(a)(8).[2] We AFFIRM.

---

[1] *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752, 756 (S.D.N.Y. 1985), *aff'd*, 831 F.2d 395, 396 (2d Cir. 1987) (adopted by this circuit in *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1111-12 (9th Cir. 1998)).

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Prepetition events

Hurley received his law degree in 2004 and his L.L.M. in tax in 2006. He received federal and private student loans to fund his legal education and bar examination costs. Hurley was admitted to practice law in the state of Washington in November 2006 but changed his license to inactive status in January 2010.

Hurley has made payments on both his federal and private student loans. He consolidated his federal student loans in 2010 and entered into an Income Based Repayment Plan. He has also been diligent in his efforts to obtain deferments and forbearances. Hurley was not in default on his student loans at the time he filed for bankruptcy.

In June 2009, Hurley was hired as a revenue agent for the Internal Revenue Service. Hurley conducted audits of taxpayers' federal tax returns.

In July 2015, Hurley began auditing the 2013 and 2014 tax returns for Have a Heart Compassion Care, Inc., a medical marijuana dispensary.[3] Hurley met with Ryan Kunkle, the representative for Have a Heart, on several occasions to discuss the tax returns. After the men had completed

---

[3] The United States alleged in Hurley's criminal case that, just days before he began his audit of Have a Heart, Hurley had received a letter from his superior stating that the IRS was proposing to terminate him or otherwise discipline him based on his unauthorized access of taxpayer data on three occasions in 2014 and his lack of candor in the investigation of his unauthorized access.

the audit process and signed the necessary forms, they went outside to have a discussion "off the record." As part of that discussion, Hurley told Kunkle that he had saved Have a Heart over $1 million in taxes. Hurley then solicited a bribe of $20,000 from Kunkle, which Hurley stated he needed to help pay his student loan debt. Fearing that Hurley would not present the signed audit documents to his superiors to complete the matter, Kunkle agreed to make the payment. Kunkle immediately reported the incident to law enforcement, who arrested Hurley after Hurley was recorded accepting two cash payments of $5,000 and $15,000 from Kunkle. Subsequently, Hurley resigned from the IRS, and he was indicted for federal offenses in connection with this conduct.

On May 13, 2016, Hurley was convicted for the crimes of Receiving a Bribe by a Public Official and Receiving an Illegal Gratuity by a Public Official, both felonies. He was sentenced to thirty months' imprisonment and three years' supervised release. Following his conviction, Hurley was disbarred from the practice of law by order of the Washington Supreme Court. Hurley was released from prison in June 2018 and is living in a halfway house in Seattle.

B.    **Postpetition events**

Hurley filed a chapter 7 bankruptcy case one month after his conviction. His debts consist almost entirely of his student loan debt. Hurley represented that, as of the petition date, his student loan debt

4

totaled approximately $256,000. Hurley was granted a discharge on September 14, 2016.

### 1.    Hurley's § 523(a)(8) complaint

In February 2017 and while incarcerated, Hurley filed a complaint against Defendants,[4] seeking to discharge his entire student loan debt under § 523(a)(8). In support of his undue hardship claim, Hurley noted his conviction, incarceration, disbarment from the practice of law, and resulting financial circumstances. Hurley stated that due to his disbarment and felony record, he would be unable to return to his former profession or be employed at the same income level, even if he could find any substantive employment following his release. Therefore, requiring him to pay his student loan debt would impose an undue hardship on him and his dependents. At the time Hurley sought his hardship discharge, he was 45 years old and had a 3-year-old son. Hurley did not note any medical or other condition that prevented him from working in the future.

### 2.    Defendants' motion for summary judgment

Defendants moved for summary judgment on Hurley's complaint ("MSJ"). Specifically, Defendants argued that Hurley was unable to satisfy the third prong of the *Brunner* test:  that the debtor has made good faith efforts to repay the loans. Defendants argued that, despite Hurley's prior

---

[4] Hurley sued additional parties but they were either voluntarily dismissed or a default judgment was entered against them.

efforts to pay and stay current on his student loan debt, his present financial misfortune was self-imposed: Hurley willfully engaged in criminal activity that directly resulted in his current financial circumstances. Defendants argued that Hurley's intentional, egregious conduct outweighed his prior repayment efforts and prevented him from establishing good faith under *Brunner*.

In opposition, Hurley argued that one past bad act should not be dispositive of good faith under *Brunner* as Defendants contended. Instead, the court should consider present-tense factors which indicate whether or not a debtor has reasonable control over his or her current situation that now imposes the undue hardship. Hurley contended that he has no control over his criminal record, that he has no law license, that he has little prospect for good employment, and that he has no savings. His present circumstances were a result of societal factors preventing a felon from ever gaining employment at an income similar to his or her previous employment. Hurley said he had submitted more than 40 job applications since his release, which resulted in only one physical interview and no job offers.

### 3. The bankruptcy court's ruling on the MSJ

At the MSJ hearing, Hurley's counsel agreed with the court that there were no material facts in dispute; the issue was whose interpretation of the good-faith prong in *Brunner* was the correct one and whether it could be

met on the facts for summary judgment purposes.

After hearing argument from the parties, the bankruptcy court announced its oral ruling granting the MSJ, finding that the facts relevant to the good-faith prong of the *Brunner* test were not in dispute and that no reasonable trier of fact could find for Hurley on good faith. Recognizing that there is no per se rule that past criminal conduct defeats good faith, the court found that the criminal conduct in this case was "very significant" and "outweigh[ed]" Hurley's earlier, good-faith efforts to repay his student loans. Precisely, the court noted that:

> As a lawyer, the Debtor had to know that, if he committed the crime that he did, he would lose his ability to practice law. As such, the Debtor suffers from both a failure to maximize his income and having willfully or negligently caused his financial condition.
>
> The Debtor's financial condition is a direct result of factors that were within his reasonable control. His financial condition was self-inflicted by his decision to commit a crime that would significantly impact his financial situation in a very negative way. The Debtor's situation is far more egregious than in some other cases within the Ninth Circuit where the debtor was found not to meet the good-faith prong for failing to maximize income or to take other action within the debtor's reasonable control.

Hr'g Tr. (Sept. 7, 2018) 20:1-15. Hurley timely appealed the bankruptcy court's later written order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158(b).[5]

## III. ISSUE

Did the bankruptcy court err in determining that Hurley could not establish good faith under *Brunner*?

## IV. STANDARD OF REVIEW

We review de novo the bankruptcy court's summary judgment ruling. *Salven v. Galli (In re Pass)*, 553 B.R. 749, 756 (9th Cir. BAP 2016).

We review de novo the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable as an undue hardship. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 (9th Cir. 2001). Whether the debtor has satisfied each of the three prongs of the *Brunner* test, including the good-faith prong, is a mixed question of law and fact requiring de novo review. *Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 916 (9th Cir. BAP 2013). We review the factual underpinnings of the bankruptcy court's good faith determination for clear

---

[5] Although the order on appeal resolved all claims against the remaining two defendants — the United States and Accesslex — the bankruptcy court did not enter a separate judgment disposing of the adversary proceeding. The parties also have not sought entry of a separate judgment despite being given the opportunity to do so. Therefore, the separate judgment requirement under Rule 7058 has been waived. *See Bankers Tr. Co. v. Mallis*, 435 U.S. 381 (1978); *Casey v. Albertson's, Inc.*, 362 F.3d 1254, 1256 (9th Cir. 2004).

error, but we review de novo the bankruptcy court's ultimate good faith conclusion. *Id.*

## V. DISCUSSION

### A.    Summary judgment standards

Summary judgment should be granted when there are no genuine issues of material fact and when the movant is entitled to prevail as a matter of law. Civil Rule 56(a) (made applicable in adversary proceedings by Rule 7056). In resolving a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). A material fact is one that, "under the governing substantive law . . . could affect the outcome of the case." *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 760 (9th Cir. 2008). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

At the hearing on the MSJ, Hurley's counsel conceded that there were no material facts in dispute and that a trial would not produce any different testimony than the parties had already presented. Thus, neither party disputed the bankruptcy court's ability to resolve this matter on summary judgment.

**B.    The bankruptcy court did not err in determining that Hurley could not establish good faith under *Brunner* and thus did not err in granting the MSJ.**

Generally, student loan obligations are presumed to be excepted from a debtor's discharge under § 727, unless repaying those loans would "impose an undue hardship on the debtor and the debtor's dependents." § 523(a)(8).[6] In *Pena*, 155 F.3d at 1111-12, the Ninth Circuit adopted the three-pronged test set forth in *Brunner*, to determine whether the undue hardship standard has been met. The burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted. *In re Rifino*, 245 F.3d at 1087-88. If the debtor does not satisfy any one of these requirements, the bankruptcy court's inquiry must end there, with a finding of no dischargeability. *Id.* at 1088.

The issue here is whether the bankruptcy court erred in reaching its

_____

[6] Section 523(a)(8) provides, in relevant part, that a discharge under § 727 does not discharge an individual debtor from any debt for:

> an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or an obligation to repay funds received as an educational benefit, scholarship, or stipend, or any other educational loan that is a qualified education loan . . . incurred by a debtor who is an individual[,] . . . unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents.

It is undisputed that the student loans at issue are of the kind which § 523(a)(8) generally excepts from discharge.

conclusion on the third *Brunner* prong:  whether the debtor made "good faith efforts to repay the loans." *In re Pena*, 155 F.3d at 1111; *In re Brunner*, 831 F.2d at 396.[7] "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." *In re Roth*, 490 B.R. at 917 (quoting *Educ. Credit Mgmt. Corp. v. Mason (In re Mason)*, 464 F.3d 878, 884 (9th Cir. 2006)); *Pa. Higher Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 499 (9th Cir. BAP 2002).

This Panel has assembled the following list of factors courts have considered in making a good faith determination:

> (1) whether the debtor has made any payments on the loan prior to filing for discharge, although a history of making or not making payments is, by itself, not dispositive; (2) whether the debtor has sought deferments or forbearances; (3) the timing of the debtor's attempt to have the loan discharged; and (4) whether the debtor's financial condition resulted from factors beyond her reasonable control, as a debtor may not willfully or negligently cause her own default.

*In re Roth*, 490 B.R. at 917 (citations and internal quotation marks omitted). *See also In re Brunner*, 46 B.R. at 756 (debtor must make an effort to repay the loans or show "that the forces preventing repayment are truly beyond

---

[7] Under *Brunner/Pena*, the debtor must also establish:  (1) that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans; and (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans. *In re Pena*, 155 F.3d at 1111; *In re Brunner*, 831 F.2d at 396.

his or her reasonable control"). While also not dispositive, another important "good faith" factor focuses upon the debtor's efforts to negotiate a repayment plan. *In re Roth*, 490 B.R. at 917 (citing *In re Birrane*, 287 B.R. at 499 and *Educ. Credit Mgmt. Corp. v. Jorgensen (In re Jorgensen)*, 479 B.R. 79, 89 & n.4 (9th Cir. BAP 2012)).

Hurley did many things that a debtor should do to establish good faith: he consistently made payments on his student loans prior to his bankruptcy filing; he sought forbearance and hardship deferments prior to and during his incarceration; he enrolled in an Income Based Repayment Program; and he has been diligent in his job hunting efforts since his release from prison. Despite his efforts, however, the bankruptcy court reasoned that Hurley's financial condition was a result of factors within his reasonable control. His current condition was self-inflicted by his willful, criminal conduct, and this outweighed his earlier good-faith efforts of repayment.

We agree that the court could consider Hurley's past criminal conduct in the good faith analysis. Other courts have concluded that a debtor's future employment limitations or lack of earning potential caused by the debtor's choice to engage in criminal conduct and subsequent incarceration were not factors beyond the debtor's reasonable control, and that such factors can preclude a finding of good faith under *Brunner*. *See Chenault v. Great Lakes Higher Educ. Corp. (In re Chenault)*, 586 B.R. 414, 421

12

(6th Cir. BAP 2018) (debtor's past criminal record affecting his ability to find adequate future employment was a condition of his own making and would not satisfy the second and third prongs of the *Brunner* test); *Watson v. Sallie Mae (In re Watson)*, No. 11-5138, 2012 WL 5360949, at *2-3 (Bankr. D. Kan. Oct. 30, 2012) (concluding that debtor's inability to repay student loans due to his felony record and resulting incarceration were factors within his reasonable control and defeated good faith; these factors also defeated the second prong of the *Brunner* test); *Looper v. U.S. Dep't of Educ. (In re Looper)*, No. 06-3042, 2007 WL 1231700, at *7-8 (Bankr. E.D. Tenn. Apr. 25, 2007) (holding same; undue hardship discharge request denied). *But see Koll v. U.S. Dep't of Educ. (In re Koll)*, No. 01-8068, 2002 WL 32001509, at *5 (Bankr. C.D. Ill. May 3, 2002) (refusing to adopt a bright-line test that precludes debtors with a criminal conviction from obtaining an undue hardship discharge when otherwise warranted).

Hurley argues that his criminal conviction should not serve as a "categorical bar" to a finding for good faith under *Brunner*. Although still an open question in this circuit, we would not endorse a bright-line rule that a debtor with a criminal past can never establish good faith. However, we do not think that the bankruptcy court so held. Based on the facts, the court simply concluded that Hurley's willful criminal behavior tipped the balance against good faith. While this may be a close call given Hurley's significant good-faith efforts to repay, we are not able to conclude that the

bankruptcy court erred. Hurley is a highly educated and capable person. More importantly, he was a licensed attorney, who knew or had to know that his conduct could result not only in a criminal conviction but also the loss of his license to practice law, and that this would negatively affect his financial situation. Further, Hurley relied entirely on his conviction, incarceration, disbarment and felony record as the basis for an undue hardship discharge. He did not cite any medical or other condition — something beyond his reasonable control — that was a contributing factor for his inability to find adequate employment and repay his student loans. *See Harvey v. Educ. Credit Mgmt. Corp. (In re Harvey)*, No.11–1958, 2013 WL 4478926, at *4 (Bankr. D. Colo. Aug. 20, 2013) (co-debtor wife's medical condition, not her prior felony conviction, prevented her from seeking employment to repay student loans).[8]

The timing of Hurley's request also weighs against good faith. *See In re Roth*, 490 B.R. at 917 (timing of debtor's attempt to have loan discharged can be considered in good faith analysis). He was still incarcerated at the time, as were the debtors in *Watson* and *Looper*, who were also denied an undue hardship discharge. *See also In re Harvey*, 2013 WL 4478926, at *4

---

[8] To the extent Hurley argues that the good-faith prong of the *Brunner* test has been inappropriately expanded to include consideration of a debtor's past bad conduct, we are bound by our circuit's adoption of *Brunner* and the factors that a court may consider for determining undue hardship, including a debtor's past acts, good or bad.

(distinguishing *Watson* and *Looper* because co-debtor wife was seeking undue hardship discharge not while incarcerated but sometime afterwards). Therefore, while his job prospects appear bleak now, that may change in the future. He still has nearly twenty years to work before retiring. Thus, his request for a hardship discharge under § 523(a)(8) seems premature.

Hurley also argues that the bankruptcy court erred when it determined that he failed to maximize his income by losing his ability to practice law considering that he had an inactive bar license since 2010. We disagree. Hurley specifically relied on his inability to practice law to establish good faith under *Brunner* in his briefing before the bankruptcy court. Furthermore, Hurley presumably put his license on inactive status in 2010 only because he did not need an active license during his employment with the IRS. In any case, even an inactive law license gave Hurley an advantage over other applicants for many jobs and likely could have supported a higher salary. That advantage is now gone solely because of his willful conduct. Therefore, the court did not err in determining that Hurley failed to maximize his income by losing his law license.

Finally, Hurley argues that the bankruptcy court erred by not considering that he had been enrolled in an Income Based Repayment Program. The court explicitly considered this fact. It simply concluded that, given all of the factors establishing good faith, Hurley could not meet his

burden of proof and that no material factual dispute remained for trial.

## VI. CONCLUSION

Because Hurley was unable to establish good faith under *Brunner* for an undue hardship discharge of his student loans under § 523(a)(8), the bankruptcy court did not err in granting Defendants summary judgment. Accordingly, we AFFIRM.