**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: KEITH MASON,

*Debtor,*

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

*Appellant,*

v.

KEITH MASON,

*Appellee.*

No. 04-35988

BAP Nos.
ID 04-01075 BMaP
ID 04-01077 BMaP

ORDER AND
OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Perris, Marlar, and Brandt, Bankruptcy Judges, Presiding

Argued and Submitted
June 9, 2006—Seattle, Washington
Memorandum Filed June 29, 2006

Memorandum Withdrawn and
Opinion Filed September 28, 2006

Before: David R. Thompson, A. Wallace Tashima, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge A. Wallace Tashima

17073

## COUNSEL

Daniel Fisher, Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, PA, St. Paul, Minnesota, for the appellant.

Joseph M. Meier, Cosho Humphry, LLP, Boise, Idaho, for the appellee.

## ORDER

Appellant's unopposed request for publication is granted. The mandate issued on July 26, 2006, is recalled and the memorandum disposition filed on June 29, 2006, 2006 WL 1876890, is withdrawn, and replaced by the authored opinion filed concurrently with this order. No further petitions for rehearing may be filed.

## OPINION

TASHIMA, Circuit Judge:

Educational Credit Management Corporation ("ECMC") appeals from the decision of the Bankruptcy Appellate Panel ("BAP"), which affirmed the bankruptcy court's partial discharge of government-insured student loans held by Debtor-Appellee Keith Mason ("Mason"). *See Educ. Credit Mgmt. Corp. v. Mason (In re Mason)*, 315 B.R. 554 (B.A.P. 9th Cir. 2004). The bankruptcy court held that full repayment of the loans would cause Mason an undue hardship within the meaning of 11 U.S.C. § 523(a)(8). It therefore discharged all amounts that Mason owed to ECMC in excess of $32,400.[1] The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b). The BAP had jurisdiction under § 158(c). We have jurisdiction under § 158(d), and we reverse.

## BACKGROUND

At the time of the bankruptcy adversary proceeding, Mason was 33 years old, single, in good physical health, and had no dependents. Mason is well-educated, having earned an undergraduate degree in philosophy from Boise State University in 1995, and a law degree from Gonzaga University in 1999. Mason financed his education by acquiring federally-insured student loans from various lenders totaling approximately $193,000 in principal and accrued interest. At issue in this proceeding is approximately $100,000 owed to ECMC in its capacity as successor-in-interest to Northwest Education Loan Association.[2]

---

[1]Mason owed ECMC approximately $100,000.

[2]The record indicates that Mason has entered into a repayment plan with another lender, Help Services Group, Inc., in order to repay a separate $65,000 student loan obligation.

Despite his education, Mason has had difficulty putting his education to use because of a learning disability that has affected his ability to concentrate, focus on details, read, and write. Mason's mother testified that he was diagnosed with the learning disability in the third grade, and that she initially thought that he would be unable to complete high school. Mason did, however, finish high school, and then served in the Army and National Guard for eight years. Following his service, Mason enrolled at Boise State, and earned a philosophy degree in 1995. After college, Mason took the Law School Admission Test and applied to law school. Despite his low test scores and GPA, Mason was accepted at Gonzaga University Law School. Although Mason initially struggled in law school, the University provided for special testing accommodations, and Mason earned his law degree in 1999.

In December 1999, Mason began working for MicronPC in Boise as a "process analyst" earning $26,000 per year. Mason took the position with the hope of ultimately joining MicronPC's legal department. In 2000, Mason took the Idaho bar examination, but failed. In May 2001, Mason became a "government contracts technician" at MicronPC, earning $14.00 per hour, but was laid off in January 2002. After receiving unemployment benefits for a few months, Mason began working as an independent contractor in April 2002, installing home siding for Diamond Construction.

The bankruptcy court found that Mason is currently earning between $1,000 and $1,200 per month as a part-time contractor for Diamond Construction, and that his monthly expenses average between $1,300 and $1,340. Mason has no fixed schedule and works on an "as needed basis," which allows Mason to apply for other jobs and attend interviews. Mason has worked with an employment service counselor, and considered a variety of jobs, but has had poor results. Based on his experience, Mason has testified that he does not expect his law degree will improve his chances of securing employment.

While Mason has a commercial truck driver's license, he has been unable, or unwilling, to work as a truck driver.

Mason filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 16, 2003. Mason owed a total of $209,070.91 in unsecured, nonpriority claims, the majority of which were for student loan debts. Mason sought discharge of his student loan obligations pursuant to 11 U.S.C. § 523(a)(8). Applying *Brunner v. New York State Higher Education Services Corp. (In re Brunner)*, 831 F.2d 395, 396 (2d Cir. 1987), and *Saxman v. Education Credit Management Corp. (In re Saxman)*, 325 F.3d 1168, 1174-75 (9th Cir. 2003), the bankruptcy court partially discharged Mason's debt owed to ECMC, to the extent it exceeded $32,400. The BAP affirmed, and ECMC now appeals.

## STANDARD OF REVIEW

"Because we are in as good a position as the BAP to review bankruptcy court rulings, we independently examine the bankruptcy court's decision, reviewing the bankruptcy court's interpretation of the Bankruptcy Code de novo and its factual findings for clear error." *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 547 (9th Cir. 2004) (citation and internal quotation marks omitted). We have held that whether repayment of a student loan debt would impose an undue hardship requires a determination of the "legal effect of the bankruptcy court's findings" regarding the student's circumstances, a question of law which we review de novo. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087 n.2 (9th Cir. 2001).

## DISCUSSION

[1] An educational loan is dischargeable in bankruptcy if "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). To determine if excepting student debt from discharge will impose an undue hardship, we apply the

three-part test first enunciated in *In re Brunner*, 831 F.2d at 396. *See United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir. 1998) (adopting the *Brunner* test). Under the *Brunner* test, the debtor must prove that: (1) he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if required to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) the debtor has made good faith efforts to repay the loans. *Id.* at 1111; *Brunner*, 831 F.2d at 396. "[T]he burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted." *In re Rifino*, 245 F.3d at 1087-88 (citation omitted).

## I.  Minimal Standard of Living

The first prong of the *Brunner* test requires that Mason prove that he cannot maintain a minimal standard of living if he were required to repay the loans. *See In re Saxman*, 325 F.3d at 1173; *In re Rifino*, 245 F.3d at 1088. The bankruptcy court found that Mason's average monthly income generally fluctuated between $1,000 and $1,200 per month, and that in some months it was below that amount. The bankruptcy court also found that Mason's necessary average monthly expenses, excluding his loan payments, were between $1,300 and $1,340 per month. Based on these findings, the bankruptcy court concluded that Mason satisfied the first prong of the *Brunner* test because he would not be able to maintain a minimal standard of living if required to repay the loans.

**[2]** "The method for calculating a debtor's average monthly expenses is a matter properly left to the discretion of the bankruptcy court." *In re Pena*, 155 F.3d at 1112. Because ECMC does not dispute the bankruptcy court's findings regarding Mason's monthly income and expenses, we will not disturb them. *See id.*; *Pa. Higher Educ. Assistance Agency v.*

*Birrane (In re Birrane)*, 287 B.R. 490, 496 (B.A.P. 9th Cir. 2002).[3]

## II. *Additional Circumstances*

The second prong of the *Brunner* test requires a debtor to prove that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *In re Brunner*, 831 F.2d at 396. We recently clarified that a "debtor does not have a separate burden to prove 'additional circumstances,' beyond the inability to pay presently or in the future." *Educ. Credit Mgmt. Corp. v. Nys (In re Nys)*, 446 F.3d 938, 945 (9th Cir. 2006) (holding that that bankruptcy court erred in requiring debtor to show exceptional circumstances beyond the inability to pay in the present and a likely inability to pay in the future).

---

[3]ECMC argues that the bankruptcy court erred because Mason failed to establish that he maximized his income. As a preliminary matter, ECMC did not raise this argument before the bankruptcy court or the BAP, and therefore has waived it on appeal. *See Burnett v. Resurgent Capital Servs. (In re Burnett)*, 435 F.3d 971, 975-77 (9th Cir. 2006) ("[A]n issue is waived if not presented to the BAP, unless exceptional circumstances exist to justify consideration of the issue."). Even if we were to reach the argument, however, ECMC's contention that Mason must establish that he maximized his income in order to meet the *first* prong of *Brunner* does not find support in the case law. Although ECMC claims that *United Student Aid Funds, Inc. v. Nascimento (In re Nascimento)*, 241 B.R. 440 (B.A.P. 9th Cir. 1999), requires that Mason prove that he has maximized his income, *Nascimento* appears to impose no such requirement. *See In re Nascimento*, 241 B.R. at 444-45. In any event, even if *Nascimento* could be read to require a debtor to prove that he maximized his income to meet the first prong of the *Brunner* test, we have not specifically imposed such a requirement. *See In re Rifino*, 245 F.3d at 1088 (requiring only that debtor prove she could not maintain a minimal standard of living based on her current income and expenses); *In re Pena*, 155 F.3d at 1112-13 (determining whether first prong of *Brunner* test was met by subtracting debtor's average monthly expenses from their net monthly income). Accordingly, ECMC's contention fails.

Here, the bankruptcy court found that Mason's learning disability, and his inability to put his law degree to use, were additional circumstances indicating that Mason's financial circumstances would not improve for a significant period of time. ECMC argues that the bankruptcy court erred because: (1) Mason presented legally insufficient evidence of any disability; (2) Mason should not be permitted to rely on a pre-existing circumstance (*i.e.*, a disability that predated his decision to take out the loans); and (3) despite Mason's learning disability, there is every indication that Mason's situation will improve.

ECMC's first argument — that Mason presented legally insufficient evidence of his disability — is being raised for the first time on appeal; heretofore, ECMC has never disputed the existence of Mason's learning disability. In fact, ECMC's own vocational expert acknowledged that Mason had a learning disability that might affect his performance. *See In re Burnett*, 435 F.3d at 975-77 (holding that an argument is generally considered waived if not presented to the BAP). In addition, Mason testified regarding his learning disability and the impact it has had on his ability to succeed. Mason's testimony was also corroborated by his mother's testimony and the special accommodations he received in law school. Thus, sufficient evidence supports the bankruptcy court's finding that Mason has a learning disability.

**[3]** ECMC further argues that even if Mason has provided corroborating evidence of the existence of his learning disability, he failed to provide any evidence of *how* his learning disability impaired his ability to work. While ECMC's position has some merit, *see Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 330-31 (3d Cir. 2001) (holding that the bankruptcy court cannot merely assume that debtor's psychiatric problems precluded her from finding employment, and requiring some showing of how disability affected debtor's ability to earn income), the record establishes that Mason's learning disability has made it diffi-

cult for him to hold positions that require particular attention to detail or concentration. Moreover, unlike in *Brightful*, the bankruptcy court in this case did make specific findings that Mason's learning disability diminished his prospects of succeeding in any professional career and has placed him at a relative disadvantage compared to other job applicants. *Cf. id.* ("What is missing from the Bankruptcy Court's analysis, however, is any discussion of the nature of Brightful's emotional and psychiatric problems, or how these problems prevent her from being gainfully employed."). We conclude that the bankruptcy court did not clearly err in finding that Mason suffered from a learning disability that impaired his ability to earn a sufficient income now or in the future.

**[4]** ECMC next argues that Mason should not be permitted to rely on an "additional circumstance" that predated his decision to take out the loans, relying on *Thoms v. Educational Credit Management Corp (In re Thoms)*, 257 B.R. 144, 149 (Bankr. S.D.N.Y. 2001). We have never drawn such a distinction between pre-existing and later-arising "additional circumstances," and ECMC cites no binding authority supporting its position. As the BAP aptly noted:

> [N]o circuit court has held that a circumstance or condition in existence at the time the debtor obtained the educational loan in question must be excluded from consideration in the persistence analysis, or that the debtor must show a worsening or exacerbation to carry his burden on the second *Brunner* prong.

315 B.R. at 561. We agree with the BAP's reasoning and, consequently, reject this argument. *See also Educ. Credit Mgmt. Corp. v. Nys (In re Nys)*, 308 B.R. 436, 446 (B.A.P. 9th Cir. 2004) (explaining that "[t]he 'additional circumstances' test does not focus on a debtor's past choices, but on currently existing circumstances and what those circumstances show with regard to the debtor's future financial situation"), *aff'd*, 446 F.3d 938 (9th Cir. 2006).

Finally, ECMC argues that despite Mason's learning disability, there is every indication that Mason's situation will improve. The bankruptcy court agreed, concluding that Mason would, at some point, be able to make loan payments, and thus granted Mason only a partial discharge of his loan debt. Because ECMC does not argue that these findings are erroneous, and the bankruptcy court held that Mason had satisfied the second prong of the *Brunner* test only with respect to a portion of his student loans, *see In re Saxman*, 325 F.3d at 1174 ("A debtor who wishes to obtain a discharge of his student loans must therefore meet the requirements of § 523(a)(8) *as to the portion of the debt to be discharged* before that portion of his or her debt can be discharged." (citation omitted) (emphasis added)), we reject this claim.

## III.   *Good Faith*

**[5]** The final prong of the *Brunner* test requires that the debtor exhibit good faith in his efforts to repay the student loans. *See In re Pena*, 155 F.3d at 1114. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." *In re Birrane*, 287 B.R. at 499 (citations omitted); *see also In re Pena*, 155 F.3d at 1114. Courts will also consider "[a] debtor's effort — or lack thereof — to negotiate a repayment plan," *In re Birrane*, 287 B.R. at 499, although a history of making or not making payments is, by itself, not dispositive, *see id.* at 499-500.

The bankruptcy court concluded that Mason exhibited good faith because he attempted to maximize his income, minimize his expenses, and negotiate with his student loan creditors. The court rejected ECMC's argument that Mason has not shown good faith based on his failure to attempt the bar exam a second time, his failure to obtain a second part-time job in the evening, and his failure to sign up for the Income Contingent Repayment Plan ("ICRP"). ECMC now renews these arguments on appeal.

**[6]** In *In re Biranne*, the Ninth Circuit BAP recently reversed the bankruptcy court, *inter alia*, because the debtor did not use her "best efforts to maximize her income" and failed to take steps towards re-negotiating a repayment schedule under the ICRP. *See* 287 B.R. at 499-500; 34 C.F.R. § 685.209.[4] There, the BAP reasoned that the debtor failed to maximize her income because she worked only part-time and provided no evidence that "she explored the possibility, or was even willing, to take a second job outside her field." *Id.* at 499. While the BAP recognized that the debtor had "previously made some effort in negotiating repayment of her student debt," it further reasoned that the debtor's failure to explore the ICRP option that became available to her also weighed against finding that she had met her burden of proof on the issue of good faith. *Id.* at 499-500.

**[7]** We conclude that, like the debtor in *In re Biranne*, Mason has not met his burden of establishing good faith in attempting to pay back the student loans. While Mason has minimized his expenses, he has not maximized his income, nor has he made adequate efforts to obtain full-time employment. Mason works only part-time as a home siding installer, despite holding a bachelor's degree in philosophy and a law degree. Mason sought to justify his unwillingness to find a second part-time job on the ground that it would make it difficult for him to continue his ongoing search for a full-time position. The record belies this testimony, instead revealing that Mason's search for full-time employment has been inadequate in light of the significant free time his schedule provides him. *See In re Birrane*, 287 B.R. at 499-500 (finding lack of good faith, in part, because debtor declined to obtain a second part-time job).

**[8]** Mason also claims that he is unable to seek work as an

---

[4]Under the ICRP, a debtor's monthly payments vary based on the debtor's ability to pay. After 25 years, any debt remaining on the consolidated loans is forgiven. *See* 34 C.F.R. § 685.209(c)(4)(iv).

attorney because he cannot pass the bar examination. Mason has, however, made only one attempt to pass the Idaho bar exam, without requesting special testing accommodations, despite blaming his failure on his learning disability. Mason further testified that he does not intend to take the bar exam a second time, even though he acknowledged that he has substantial free time that he could dedicate to studying. *See Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner)*, 309 B.R. 405, 418 (Bankr. E.D.N.Y. 2004) ("In general, courts have found that failure to pass the bar exam is not a sufficient reason for the discharge of student loans." (citations omitted)); *Parks v. Graduate Loan Ctr. (In re Parks)*, 293 B.R. 900, 904 (Bankr. N.D. Ohio 2003) (refusing to discharge law school loans after debtor failed bar exam primarily due to insufficient effort to retake exam).

**[9]** Finally, while Mason appears to have made some previous efforts to negotiate repayment of his debt, his efforts have been inadequate. The record demonstrates that Mason could have attempted renegotiation of his debt under the ICRP, but failed to pursue this option with diligence. *See In re Birrane*, 287 B.R. at 500 (finding lack of good faith, where debtor previously made some effort in negotiating repayment of her student debt but failed to pursue ICRP option when it became available). For the foregoing reasons, we conclude that the bankruptcy court clearly erred in finding that Mason demonstrated good faith efforts to repay his loans.

## CONCLUSION

Accordingly, the BAP's decision is **REVERSED and REMANDED** for further proceedings consistent with this opinion.