**In re Mark E. LILLY, Debtor,**

**Mark E. Lilly, Plaintiff,**

**v.**

**Illinois Student Assistance Commission, et al., Defendants.**

**Bankruptcy No. 09–02666–LT7. Adversary No. 11–90470–CL.**

United States Bankruptcy Court, S.D. California.

Jan. 31, 2013.

---

**12.** The court ruled orally from the bench at the close of oral argument. This opinion memorializes that ruling.

Mark E. Lilly, Rock Falls, IL, pro se.

Illinois Student Assistance Commission, Deerfield, IL, pro se.

Access Group, Inc., Wilmington, DE, pro se.

Wells Fargo Bank, San Francisco, CA, pro se.

Robert S. Lampl, Law Office of Robert S. Lampl, Woodland Hills, CA, Timothy

Burke, Timothy P. Burke & Associates, South Pasadena, CA, for Defendants.

## MEMORANDUM DECISION AND ORDER DENYING DIS- CHARGEABILITY

CHRISTOPHER B. LATHAM, Bankruptcy Judge.

Plaintiff–Debtor Mark E. Lilly filed a Complaint under 11 U.S.C. § 523(a)(8) to discharge his educational debt held by defendant Sallie Mae, Inc. ("Sallie Mae"). Because the court finds that Mr. Lilly's circumstances do not indicate his hardship will likely persist for a significant portion of his repayment period and that he has not made a good faith effort to repay his loans, the educational debt to Sallie Mae is not dischargeable. The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(I) and 1334(b).

## I

Mr. Lilly filed a voluntary Chapter 7 petition in this court on March 3, 2009. [Case No. 09–02666–LT7, ECF No. 1.] He received a discharge on June 9, 2009. [Case No. 09–02666–LT7, ECF No. 14.] On October 5, 2011, Mr. Lilly filed the Complaint in this action seeking an "undue hardship" discharge of his educational debt to Sallie Mae. At that time, he held total student loan debt of approximately $276,370. [Sallie Mae Interrog. 13, ECF No. 75.] He currently owes Sallie Mae approximately $101,260. [Sallie Mae Decl. 2 & Ex. B, ECF No. 70.] The court tried the case on December 19, 2012.

Mr. Lilly is highly educated and qualified for a variety of positions. He holds four degrees:

- associate's in science from Sauk Valley Community College in 1995;

- bachelor's in business administration from Hawaii Pacific University in 1996;
- master's of business administration from California State University, Sacramento in 2002; and
- juris doctor from McGeorge School of Law in 2002

[Sallie Mae Interrog. 10.] Although Mr. Lilly twice sat unsuccessfully for the California bar, he passed the Illinois bar examination in 2004. [Trial Tr. 36:18–37:4, ECF No. 83.] His complaint alleges he then went on to take 70 more college units in Illinois and at the University of California, San Diego. [Lilly Compl. 5, ECF No. 1; Lilly Trial Ex. 3.] In addition, he has earned a paralegal certificate [Sallie Mae Interrog. 10], possessed a real estate license "seven or eight years ago" [Sallie Mae Interrog. 13], and at one point held a valid commercial truck driver's license. [Trial Tr. 61:22–23.]

Mr. Lilly has had a variety of jobs. For fifteen years he worked for United Parcel Service. [Trial Tr. 13:13–14.] Between 2002 and 2007, he held a variety of non-legal positions, including:

- test scoring for Kelly Services;
- telemarketing for APAC Customer Services Inc.;
- bookkeeping for B & D Home Supply, Inc.;
- customer service for Follett Higher Education Group, Inc.;
- making deliveries for Domino's Pizza; and
- assisting teachers for AmeriCorps.

[Sallie Mae Interrog. 7–8.] In October 2007, Mr. Lilly began work for Kerry Steigerwalt & Associates as a paralegal. But in February 2008, he was abruptly fired. [Sallie Mae Interrog. 9 & 13.] He then looked for work, submitting nearly 600 resumes in 2008. [Trial Tr. 40:2–4.]

Mr. Lilly directed many of these resumes to prominent law firms. [Sallie Mae Trial Ex. G.] When he secured interviews, he received no job offers, allegedly due to his lack of experience. [Trial Tr. 18:24–19:7.] From August 2009 to October 2009, Mr. Lilly worked for Kable Fulfillment Services, sorting coupons. [Sallie Mae Interrog. 9.] He held no regular employment from 2010 through 2012. [Trial Tr. 41:3–7.]

Mr. Lilly is now 55 years old, single, with no dependents. [Trial Tr. 13:21 & 45:25–46:3.] He has back and shoulder problems that prevent him from doing heavy lifting, but is otherwise in good health. [Trial Tr. 13:13–20 & 45:16–21.] He collects approximately $175 per month in Supplemental Nutrition Assistance Program food stamps, but receives no other income. [Sallie Mae Interrog. 11.] He lives in Rock Falls, Illinois with his father, rent-free. [Trial Tr. 32:20–23 & 33:20–21]. One of his few expenses is $325 per year for registration and insurance on his 1994 Chevrolet automobile. [Sallie Mae Interrog. 18; Trial Tr. 46:6–8.] Mr. Lilly has exhausted his deferment and forbearance options, and has failed to remain current on his student loan payments. [Trial Tr. 25:9–10 & 60:10–15.] He is searching for work, and is willing to relocate for a job. [Sallie Mae Interrog. 12; Trial Tr. 45:1–5.] But his Illinois law license, real estate license and truck driver's license are all either inactive or invalid. [Trial Tr. 37:15–38:2 & 61:22–62:2.] Mr. Lilly has made no attempts to craft a repayment plan with Sallie Mae since 2009. [Trial Tr. 54:24–55:1.] And he is now unwilling to negotiate his debt terms with Sallie Mae. [Sallie Mae Interrog. 5; Trial Tr. 55:2–57:7.]

## II

Mr. Lilly received a discharge under 11 U.S.C. § 727 in June 2009. But § 727 does not discharge an educational loan unless it "would impose an undue hardship on the debtor and the debtor's dependents...." 11 U.S.C. § 523(a)(8). To determine "undue hardship," the Ninth Circuit adopted the three-part test from *In re Brunner*. *See In re Pena*, 155 F.3d 1108 (9th Cir.1998) citing *In re Brunner*, 46 B.R. 752 (S.D.N.Y.1985), *aff'd*, 831 F.2d 395 (2d Cir.1987). The *Brunner* test has three conjunctive prongs:

> First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." [citation omitted] ...

> Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." [citation omitted] ...

> The third prong requires "that the debtor has made good faith efforts to repay the loans...." [citation omitted]....

*In re Adler*, 300 B.R. 740, 746–47 (Bankr. N.D.Cal.2003) citing *In re Pena*, 155 F.3d at 1112. "A preponderance of the evidence standard applies." *In re Carnduff*, 367 B.R. 120, 128 (9th Cir. BAP 2007). And "[i]f the debtor fails to satisfy any one of these requirements, the bankruptcy court's inquiry must end there, with a finding of no dischargeability." *In re Rifino*, 245 F.3d 1083, 1088 (9th Cir.2001) (internal quotations omitted) citing *In re Faish*, 72 F.3d 298, 306 (3d Cir.1995). Although Mr. Lilly meets the *Brunner* test's first requirement, he fails the second and third prongs. The court therefore finds his educational debt to Sallie Mae is non-dischargeable.

### A

To satisfy the first prong of the *Brunner* test, Mr. Lilly must show that he

cannot maintain a minimal standard of living if he were required to repay the loans. "The method for calculating a debtor's average monthly expenses is a matter properly left to the discretion of the bankruptcy court." *In re Pena,* 155 F.3d at 1112–13. And "[t]o meet this requirement, the debtor must demonstrate more than simply tight finances. In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness." *In re Nascimento,* 241 B.R. 440, 445 (9th Cir. BAP 1999). "While a bankruptcy court may consider the IRS Standards as one piece of evidence in relation to its first prong analysis, [citation omitted], it should not [be used as] the sole measure of what is necessary to maintain a minimal standard of living." *In re Howe,* 319 B.R. 886, 892–93 (9th Cir. BAP 2005).

█ Mr. Lilly's only income is from Supplemental Nutrition Assistance Program food stamps, $175 per month. Although he pays no rent, the IRS National Standard for food alone is $301 per month. *See* IRS National Standards: Food, Clothing and Other Items, *available at* http://www.irs.gov/Businesses/Small–Businesses–&–Self–Employed/National–Standards:–Food,–Clothing–and–Other–Items. He also has expenses of approximately $27 per month for insurance and registration of his automobile. Thus, Mr. Lilly's income is only $175 per month, while his reasonable expenses—excluding student loans—total at least $328 per month. The court therefore finds, based on current income and expenses, that Mr. Lilly does not presently maintain a minimal standard of living for himself.

**B**

█ Although Mr. Lilly meets the first prong of the *Brunner* test, he fails the second. It requires him to prove through "additional circumstances" that his current hardship will persist throughout a substantial portion of the loan's repayment period. He must show "something which makes [his] circumstances more compelling than that of an ordinary person in debt." *Nys v. Educ. Credit Mgmt. Corp. (In re Nys),* 308 B.R. 436, 444 (9th Cir. BAP 2004).

We will presume that the debtor's income will increase to a point where [he] can make payments and maintain a minimal standard of living; however, the debtor may rebut that presumption with "additional circumstances" indicating that [his] . . . inability to make payments will likely persist throughout a substantial portion of the loan's repayment period. . . . The [additional circumstances] a court may consider include, but are not limited to:

(1) Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement;

(2) The debtor's obligations to care for dependents;

(3) Lack of, or severely limited education;

(4) Poor quality of education;

(5) Lack of usable or marketable job skills;

(6) Underemployment;

(7) Maximized income potential in the chosen educational field, and no other more lucrative job skills;

(8) Limited number of years remaining in [the debtor's] work life to allow payment of the loan;

(9) Age or other factors that prevent retraining or relocation as a means for payment of the loan;

(10) Lack of assets, whether or not exempt, which could be used to pay the loan;

(11) Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income;

(12) Lack of better financial options elsewhere.

*In re Nys,* 446 F.3d 938, 947 (9th Cir. 2006).

In *Educational Credit Management Corporation v. Rhodes,* debtor Rhodes was "a single, 52–year–old man with no dependents." *Educ. Credit Mgmt. Corp. v. Rhodes,* 464 B.R. 918, 921 (W.D.Wash. 2012). He held numerous degrees, including: (1) an associate's in art education; (2) a bachelor's in bio-agricultural science; (3) a master's in library and information science; and (4) a certificate in network systems administration. Rhodes had no medical condition that prevented him from working. *Id.* at 921–22. And he had been employed in several different positions, among them as a library director, an information technology quality assurance tester and a caregiver. *Id.* at 921. In examining the *Nys* factors, the bankruptcy court found—in favor of dischargeability—that Rhodes was underemployed, lacked assets and had potentially increasing expenses. The bankruptcy court held Rhodes's showing sufficient to meet prong two of the *Brunner* test. But on appeal, the U.S. District Court for the Western District of Washington found these facts "insufficient basis for concluding that [Rhodes] had met his burden as to prong two." *Id.* at 925.

█ Like Rhodes, Mr. Lilly is single, in his fifties and has no dependents. And like Rhodes, Mr. Lilly is highly educated, with a variety of work experience. Although Mr. Lilly has back problems that prevent heavy lifting, he is otherwise healthy. He suffers no serious mental or physical disability that would preclude many kinds of employment. Like *In re*

*Rhodes,* the only *Nys* factors favoring discharge are Mr. Lilly's history of underemployment and his lack of assets. The court does not make light of Mr. Lilly's unfortunate circumstances. But it does not find his circumstances more compelling than those of the average person with student loan debt. Indeed, the court is confident that Mr. Lilly—with determination and effort—can make a better life for himself. For example, he may yet obtain an entry-level position and, given his extensive education, conceivably rise to a management position within a few years.

The court therefore finds that Mr. Lilly has not met his burden as to prong two of the *Brunner* test. Consequently, his educational debt to Sallie Mae is nondischargeable.

### C

█ Even if Mr. Lilly had met his burden on the second prong, though, he fails to satisfy the third. To do so, Mr. Lilly must prove his good faith effort to repay his loans. There is no presumption of good faith, and a demonstration that one does not lack good faith is insufficient. *Educ. Credit Management Corp. v. Blackbird (In re Blackbird),* No. WW–07–1454–KJuKu, 2008 WL 8444793, at *7 (9th Cir. BAP July 11, 2008).

> Good faith is measured by the debtor's 'efforts to obtain employment, maximize income, and minimize expenses.' [citations omitted].... A debtor's effort—or lack thereof—to negotiate a repayment plan is an important indicator of good faith. [citation omitted].

*In re Birrane,* 287 B.R. 490, 499 (9th Cir. BAP 2002). A debtor's obligation to make "good faith" efforts to repay his loans continues even after the bankruptcy petition and adversary complaint are filed. *In re Wallace,* 259 B.R. 170, 185

**52**

(C.D.Cal.2000). Where a debtor has not made adequate efforts to obtain a full-time job, or is unwilling to work multiple part-time jobs, the court may find that the debtor has not attempted in good faith to repay the student loans. *In re Mason,* 464 F.3d 878, 885 (9th Cir.2006); *see also Birrane,* 287 B.R. at 499–500 ("[A] debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control. [citation omitted]. Declining to obtain additional work is not a factor beyond [a debtor's] reasonable control.") (internal quotations omitted).

In *In re Mason,* debtor Mason was "single, in good physical health, and had no dependents." *In re Mason,* 464 F.3d at 880. Mason had earned an undergraduate degree in philosophy as well as a law degree. He financed his education with federally insured student loans. After obtaining his law degree, Mason took and failed the Idaho bar examination. He worked a series of low paying jobs, and then filed for bankruptcy protection. At the time of his petition, Mason worked part-time as a home siding installer, earning no more than $1,200 per month. To find new work, he consulted an employment service counselor and considered a variety of jobs, with poor results. Mason also held a commercial truck driver's license, but had been unable or unwilling to work as a truck driver. *Id.*

In examining Mason's good faith, the Ninth Circuit Court of Appeals noted that he worked only part-time as a home siding installer, despite having two post-secondary degrees. The Ninth Circuit found that his search for full-time employment was inadequate because his schedule left him significant free time to apply and interview. The court also considered Mason's lack of effort to renegotiate his debt under an income contingent plan and his unwillingness to retake the bar examination. The Ninth Circuit reasoned that, because he had neither maximized his income nor made adequate efforts to obtain full-time employment, Mason had not met his burden of establishing good faith. The Court thus held his student loans to be nondischargeable. *Id.* at 885.

Like Mason, Mr. Lilly is single, in good physical health and has no dependents. As with Mason, Mr. Lilly obtained multiple post-secondary degrees. Mr. Lilly held not only a truck driver's license like Mr. Mason, but also a real estate license and a paralegal certificate. Mr. Lilly similarly consulted job services and considered other career options, yielding nothing. And Mr. Lilly worked a series of low paying jobs before filing his bankruptcy petition. But whereas some of Mason's time was taken by his part-time job, Mr. Lilly held no employment from February 2008 to December 2012, aside from his three months of part-time work with Kable Fulfillment Services in 2009. Thus, like Mason, Mr. Lilly's schedule affords him ample free time to apply and interview for jobs. He has done so in the past: in 2008, he sent out some 600 resumes. But he directed many of the resumes to large law firms—firms that were very unlikely to respond favorably. Mr. Lilly alleges that despite obtaining interviews, employers rejected him for lack of experience. But the court finds it difficult to believe Mr. Lilly has been precluded from finding *any* gainful employment in the past five years, aside from sorting coupons.

Unlike Mason, Mr. Lilly has attempted the California bar examination twice and passed the Illinois bar examination. But this happened before 2005, and it is Mr. Lilly's good faith efforts from 2008 through 2012 that the court finds lacking. It is unclear whether Mr. Lilly is eligible

for an income based repayment plan on his unconsolidated loans. But Mr. Lilly has alleged no effort to move into such a plan, and has declared his unwillingness to negotiate his debt terms with Sallie Mae. Like Mason, then, Mr. Lilly has not maximized his income. Nor has he made adequate efforts to obtain full-time employment or to renegotiate his debt. As such, Mr. Lilly has failed to show the necessary affirmative good faith efforts in repaying his loans. Consequently, he fails prong three of the *Brunner* test. For this reason as well, Mr. Lilly's educational debt to Sallie Mae is nondischargeable.

### III

Mr. Lilly cannot meet two of the three *In re Brunner* standards. Thus, his educational debt to Sallie Mae does not impose an undue hardship on him under 11 U.S.C. § 523(a)(8). The court therefore holds that Mr. Lilly's educational debt to Sallie Mae is nondischargeable in bankruptcy.

The Clerk of Court is directed to enter judgment in favor of Sallie Mae.

IT IS SO ORDERED.