NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. AZ-12-1305-JuTaAh |
| ERIC D. NICHOLS and BONITA M. NICHOLS, | Bk. No. 11-12027 |
| Debtors. | Adv. No. 11-00784 |
| ERIC D. NICHOLS; BONITA M. NICHOLS, | |
| Appellants, | |
| v. | **M E M O R A N D U M**[*] |
| ALIGN WESTERN STATES LEARNING CORPORATION, | |
| Appellee. | |

Argued and Submitted on June 21, 2013
at Phoenix, Arizona

Filed - July 9, 2013

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Sarah Sharer Curley, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Eric D. Nichols argued pro se; Steven M. Cox of Waterfall, Economidis, Caldwell, Hanshaw & Villamana, P.C. argued for Appellee Align Western States Learning Corporation.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Before:  JURY, TAYLOR, and AHART[**] Bankruptcy Judges.

Debtors Eric Nichols ("Mr. Nichols") and Bonita Nichols ("Ms. Nichols")(collectively, "the Nichols") appeal from a judgment denying the discharge of student loan debt.  The Nichols contend they were not accorded adequate due process and that the court misapplied the factors set forth in <u>Brunner v. N.Y. State Higher Educ. Servs. (In re Brunner)</u>, 46 B.R. 752 (Bankr. S.D.N.Y. 1985) <u>aff'd</u>, 831 F.2d 395 (2d Cir. 1987).  We AFFIRM.

## I. FACTS

On April 27, 2011, the Nichols filed an adversary complaint seeking to discharge Mr. Nichols's student loans under § 523(a)(8).  The defendant creditor, Align, did not respond to the complaint and the clerk entered a default against Align on June 2, 2011.  On June 13, 2011, Align moved to set aside the default.  On July 26, 2011, the bankruptcy court heard the motion to set aside the default but neither granted nor denied the motion, deciding instead to conduct a prove-up hearing to determine if debtors could establish a *prima facie* case for undue hardship as necessary for nondischargeability.  As for Align, the court suggested debtors provide it with medical proof of the conditions which prevented repayment of the student loans to see if it would voluntarily abate the debt.

Before the next hearing, scheduled for September 27, 2011,

---

[**] The Honorable Alan M. Ahart, Bankruptcy Judge, Central District of California, sitting by designation.

-2-

the Nichols refused to provide Align's counsel with the medical records which might establish hardship. The Nichols expressed concern that the documents would be accessed by individuals that had no connection to the case. At that hearing, the court asked the Nichols to cooperate with Align's counsel in a limited fashion. However, by the next hearing on October 20, 2011, Align dropped its request to see the medical records before the prove-up hearing and agreed that the hearing proposed by the court would determine the issue of dischargeability; i.e. if the court found the Nichols had proved a *prima facie* case for undue hardship, Align would not defend further and the debt would be discharged. An evidentiary hearing would occur, and Align's attorney would be allowed to attend and cross-examine witnesses at the hearing. This hearing began on November, 30 2011. After an hour of testimony, the hearing was continued to February 16, 2012. The February hearing was subsequently continued to April 17, 2012, at the request of the Nichols.

At the prove-up hearing, Mr. Nichols testified that he was unemployed. He had been receiving $856 per month in unemployment benefits, but those expired. Mr. Nichols has softening and degeneration of the cartilage in his knee, causing pain and mobility issues. He is unable to have surgery to repair his knee due to a heart murmur. The records introduced confirmed Mr. Nichols was not certified as being disabled by a doctor.

Ms. Nichols testified that she worked full-time as a flight attendant. Since 2008, Ms. Nichols encountered a variety of medical problems, including: a colon resection, an appendectomy,

-3-

a hernia, a hysterectomy, a fractured foot, gallbladder issues, abnormalities in her breasts, hip and disc issues, osteoporosis, bronchitis, carpal tunnel, and an ulcer. At the hearing, Ms. Nichols testified that her hernia required further repair. Despite her many ailments, Ms. Nichols was also not certified as being disabled by a doctor. At the conclusion of the second day of testimony, the court heard argument from Mr. Nichols and took the matter under advisement.

On April 19, 2012, the bankruptcy court made oral findings of fact and conclusions of law on the record in an empty courtroom. After making the oral record, the court entered a minute order denying the discharge of the student loan debt and dismissing the adversary proceeding because the Nichols failed to make a *prima facie* case. The minute order referred the reader to a compact disc for further details. On April, 27 2012, the Nichols filed a motion to reconsider. On June 4, 2012, the Nichols' motion to reconsider was denied by entry of a lengthy order. The Nichols did not appeal the denial of reconsideration and that ruling is not before the Panel.

In its oral findings, the bankruptcy court determined Mr. Nichols's student loans did not impose an undue hardship under § 523(a)(8). The bankruptcy court applied the three-pronged test established in Brunner, which was adopted by the Ninth Circuit in United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108, 1112 (9th Cir. 1998).

The bankruptcy court held that the Nichols did not satisfy the second and third elements of the Brunner test. Analyzing the second prong, the court found that Mr. Nichols had not

-4-

proven his unemployment would continue. The court stated Mr. Nichols was pleasant, articulate, and while he was unable to do physical labor, he could still work a desk job. The court placed significant weight on the fact that neither of the Nichols were certified as physically or mentally disabled. In fact, Ms. Nichols continued to work. The court also noted that in 2008 the Nichols' combined income was $72,424 and there was nothing in the record suggesting the Nichols could not return to the same level of financial stability.

Analyzing the third prong, the bankruptcy court found there was no evidence in the record to show that the Nichols made a good faith effort to repay the loans. The Nichols provided no evidence to show a repayment effort, nor did they address that prong in argument.

Because the Nichols failed to satisfy the second and third prongs of the Brunner test, the court entered the order dismissing the adversary proceeding. On June 8, 2012, the Nichols filed a timely appeal.[1]

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). This Panel has jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

A. Whether the bankruptcy court's prove-up procedure and subsequent oral ruling violated the Nichols' due process rights.

---

[1] The time to appeal had been extended by the timely reconsideration motion.

-5-

B.  Whether the bankruptcy court erred in refusing to discharge Mr. Nichols's student loan debt.

## IV. STANDARD OF REVIEW

We review de novo the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable and whether the Nichols' due process rights were violated. Rifino v. United States (In re Rifino), 245 F.3d 1083, 1086-87 (9th Cir. 2001).

We review the bankruptcy court's factual findings for clear error. Educ. Credit Mgmt. Corp. v. Mason (In re Mason), 464 F.3d 878, 881 (9th Cir. 2006) (quoting Miller v. Cardinale (In re DeVille), 361 F.3d 539, 547 (9th Cir 2004)). We affirm the bankruptcy court's factual findings if its interpretation of the facts was not illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009).

## V. DISCUSSION

**A.  The Bankruptcy Court's Prove-Up Procedure and Oral Ruling did not Violate the Nichols' Due Process Rights.**

The Nichols assert a two-pronged argument that the decisional process of the bankruptcy court was unfair, depriving them of due process. First, they submit they were not accorded a trial on the merits before the adversary proceeding was dismissed. Second, they accuse the bankruptcy judge of first ordering dismissal, then later - after the reconsideration motion and appeal - making findings to support the ruling. Neither argument has merits on this record.

Instead of ruling on Align's motion to set aside default,

the court set an evidentiary prove-up hearing for the debtors, which Align subsequently agreed would be the basis for the court's dispositive ruling on dischargeability. The Nichols had two days in court to present their oral testimony and documentary evidence to establish undue hardship, subject only to cross-examination by Align and questions from the court. At the close of the evidentiary presentation, the court allowed Mr. Nichols to argue his case, then took the matter under advisement.

Although not labeled a "trial," this procedure accorded the Nichols full opportunity to present an evidentiary showing to prove their claims and was more favorable to them than a full trial because Align was not allowed to present a defense, such as testimony from expert witnesses. The Nichols' complaint of not having a trial rings hollow.

The Nichols' assertion that the court did not support the minute order with factual findings and their confusion about the transcript of the April 19 ruling is understandable. The procedure used by the bankruptcy judge - recording an oral ruling in an empty courtroom and referencing that record in a minute entry by stating "order the compact disc" - is nonstandard and likely to lead to an assertion on appeal that the court supported its decision after the fact. As the Nichols noted at oral argument, they did not initially understand the compact disc contained the oral ruling nor could they have afforded to pay for it at the time. Although we rule the Nichols received proper due process here and the record contains necessary findings, the far preferable method is for the court

to announce its ruling in open court with the parties present to avoid the obvious confusion this judge's procedure created.

The transcript of the court's oral ruling, referenced in the April 19 minute order by noting the compact disc, did not appear on the court's docket until June 5, 2012, after the appellee ordered it. However, the cover page of the transcript irrefutably shows the transcribed ruling was placed on the court's digital recording system by the judge on April 19, 2012, two days after the matter was taken under advisement. Therefore, the foundation for the court's merits ruling was established prior to the dispositive order. This foundation was legally sufficient under the rules.

The Federal Rules of Civil Procedure provide that in an action tried on the facts without a jury or with an advisory jury, the court must find the facts specifically and state its conclusions of law separately. Civil Rule 52(a). The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Id. This rule is incorporated into bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7052. The rationale for imposing the "written statement" requirement is to ensure accurate fact-finding and to assist in judicial review of the decision. See United States v. Daniel, 209 F.3d 1091, 1093 amended, 216 F.3d 1201 (9th Cir. 2000). These purposes are met when a court states the reasons for its decision on the record. Id.

In American Mfrs. Mut. Ins. Co. v. Sullivan, the Supreme Court created a two-step analysis to determine if there has been a due process violation:

> The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty'. Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.

526 U.S. 40, 59 (1999).

In this case there was no deprivation of a protected interest and, therefore, there was no due process violation. The Nichols contend the bankruptcy court violated their due process rights by not providing written findings of fact and law. However, the bankruptcy court provided a record of its factual findings and legal conclusions. The transcript of the oral ruling of the bankruptcy court functions as a written record because it allows for accurate judicial review of the court's factual findings and legal conclusions. The oral findings of the bankruptcy court help to ensure accurate fact-finding and provide a basis for judicial review, fulfilling the purposes of a written record.

**B. The Bankruptcy Court Properly Applied the Brunner Factors and its Findings of Fact were not Clearly Erroneous.**

Under § 523(a)(8), student loan debt is to be presumed nondischargeable unless the debtor establishes that repayment would impose an undue hardship. The Bankruptcy Code does not define undue hardship. Educ. Credit Mgmt. Corp. v. Nys (In re Nys), 446 F.3d 938, 944 (9th Cir. 2006). We apply the three-part test established in Brunner to determine if repayment

-9-

would impose an undue hardship. See Pena, 155 F.3d at 1112 (adopting the "Brunner test" from Brunner, 46 B.R. at 753). Under the Brunner test, the debtor must prove: (1) he cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if required to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) the debtor has made good faith efforts to repay the loans. Id. at 1111. The debtor bears the burden of proof on all three elements. Rifino, 245 F.3d at 1078-88.

## 1.    Minimal Standard of Living

Under the first prong of the Brunner test, the Nichols must prove that they cannot maintain a minimal standard of living if they are required to repay the loans. United Student Aid Funds v. Nascimento (In re Nascimento), 241 B.R. 440, 445 (9th Cir. BAP 1999). The bankruptcy court found that the Nichols' net income was approximately $2,000 per month, with expenses over $3,600 per month. The court held the Nichols' current financial situation was sufficient to satisfy the first prong of the Brunner test. Neither party challenged that ruling on appeal.

## 2.    Additional Circumstances

Under the second prong of the Brunner test, the Nichols' must provide additional circumstances that indicate their inability to repay the debt is likely to persist for a significant portion of the loan repayment period. See Brunner, 831 F.3d at 396. Additional circumstances are not defined solely by their nature or by a convenient label, but by their

-10-

effect on the debtor's continuing inability to repay over an extended period of years. In re Nys, 308 B.R. 436, 443 (9th Cir. BAP 2004), aff'd, 446 F.3d 938 (9th Cir. 2006). A court may consider a number of factors not limited to the following: the debtor's age, training, physical and mental health, education, assets, and ability to obtain a higher paying job or reduce expenses. Id. at 446-47.

The "additional circumstances" prong of the Brunner test is intended to effect the clear congressional intent, exhibited in 11 U.S.C. § 523(a)(8), to make the discharge of student loans more difficult than other nonexcepted debt. Rifino, 245 F.3d at 1088-89. Merely having physical or mental health problems does not automatically satisfy the additional circumstances prong. See Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful), 267 F.3d 324, 330-31 (3d Cir. 2001). The debtors must show how these physical or mental conditions prevent them from obtaining future employment. Id.

The Nichols contend that their health issues are additional circumstances that will prevent them from repaying the loans. The Nichols argue that their financial situation will only get worse due to their health problems. The Nichols' argument is not persuasive because they have not shown how their health problems will prevent them from working in the future.

In Brightful, the debtor lacked a college degree and had severe emotional and psychiatric problems. 267 F.3d at 330. The court refused to discharge the debtor's student loan debt because she failed to introduce evidence showing how her mental health problems would prevent her from working. Id. at 331.

-11-

Similarly, in this case, Mr. Nichols did not demonstrate how his health problems will prevent him from obtaining employment at a job that does not require physical labor. Indeed, Mr. Nichols applied for jobs as an office manager, administrative assistant, and purchasing supervisor. Ms. Nichols recently returned to work full-time and did not show how her health issues prevented her from working, aside from temporary absences for surgery. Neither Mr. Nichols nor Ms. Nichols has been certified as being physically or mentally disabled from working. In 2008, the Nichols made over $72,000 combined and there is nothing in the record to show they cannot return to that income level. As in Brightful, the Nichols have health issues that might make work more difficult, but not issues that prevent them from obtaining or keeping employment.

The bankruptcy court considered these physical conditions in determining that the Nichols did not meet the second prong. Thus, the court's findings are not clearly erroneous.

**3. Good Faith**

The third and final prong of the Brunner test requires that the debtor prove that he made good faith efforts to repay the loans or show that the forces preventing repayment are truly beyond his control. Brunner, 46 B.R. at 755. To determine good faith, the court measures the debtor's efforts to obtain employment, maximize income, minimize expenses, and negotiate a repayment plan. Mason, 464 F.3d at 884. A history of making or not making payments is, by itself, not dispositive of good faith. Id.

-12-

Here, the bankruptcy court found that the Nichols presented insufficient evidence to prove they made good faith efforts to repay the loan. The Nichols did not provide any evidence of payments, deferrals, or attempts to consolidate. The bankruptcy court stated there was no evidence on those issues, and the record confirmed there was none. On appeal, the Nichols contend that they made and deferred payments when necessary, but they presented no evidence to the bankruptcy court to support their position. The bankruptcy court was unable to determine when the Nichols' payments started or stopped, nor could it determine whether the Nichols had explored other repayment options.

The bankruptcy court properly concluded the Nichols did not provide sufficient evidence to satisfy their burden of proof on the third prong.

## VI. CONCLUSION

Having determined the bankruptcy court's factual findings were not clearly erroneous, the Brunner test was correctly applied, and the Nichols' due process rights were not violated, we AFFIRM.